## El Pueblo *v.* Vilaró.

Apelación procedente de la Corte de Distrito de Ponce.

No. 75.—Resuelto en junio 18, 1907.

Delito Contra la Paz Pública.—El que voluntariamente perturbare ó molestare con ruídos á una congregación de personas reunidas con el fin de realizar un acto lícito, como es el culto religioso, comete el delito de alteración de la paz pública.

Id.—Habiendo demostrado la prueba practicada en el caso de autos, que el acusado, voluntariamente y con intención de molestar y perturbar los oficios de una Iglesia inmediata, tocaba su fonógrafo de noche, en las horas en que aquéllos se celebraban, dicho acusado es responsable del delito de alteración de la paz pública, pues aunque, en general, la música no puede calificarse de ruído, sin embargo, para los efectos del artículo 358 del Código Penal, puede venir á ser un ruído, según las condiciones de lugar y tiempo y en relación con el estado de ánimo de las personas que la escuchen, como ocurre en el presente caso.

Los hechos están expresados en la opinión.
Abogado del apelante: *Sr. Alvarez Nava.*
Abogado del apelado: *Sr. Rossy, Fiscal.*

EL JUEZ ASOCIADO SR. FIGUERAS, emitió la opinión del tribunal.

Este caso se originó en la corte municipal de Ponce, en donde el acusado Juan Vilaró fué condenado á virtud de denuncia que á la letra dice así:

"United Brethren Church.—Ponce, Puerto Rico.—N. H. Huffman, Pastor.—Hon. juez municipal de la ciudad de Ponce.—El que suscribe, Nathan Harlan Huffman, de este vecindario, que vive en el sitio "Cuatro Calles," ante S. H. formula denuncia jurada contra Juan Vilaró, de esta vecindad, calle de la Marina, porque voluntaria y maliciosamente, perturba, desde hace dos ó tres semanas, las ceremonias religiosas que celebra el culto "Los Hermanos Unidos en Cristo," del que es ministro oficiante el que expone; perturbación que realiza por medio de un fonógrafo, que usa en su casa habitación, situada al lado del edificio que ocupa dicho culto, y que coloca de manera que queda lo más cerca posible, dirigiendo la bocina hacia el local del referido culto. Son testigos Herminio Rodríguez, Pedro Pagán, Bonifacio Ramos, otros de esta vecindad. Ponce, diciembre 20 de 1906.—Atentamente, N. H. Huffman.—Jurada ante mí, Augusto Pasarell, Juez Municipal sustituto."

Contra la sentencia dictada por dicha corte, interpuso Vilaró recurso de apelación para ante la corte del distrito, que á su vez le condenó en 21 de enero de 1907, después de un juicio en forma, á la pena de diez dollars de multa y en defecto de pago á diez días de prisión con las costas de ambas instancias.

No satisfecho todavía el acusado con esa resolución, también interpuso recurso de apelación contra ella para ante esta Corte Suprema, y aquí ha comparecido con una exposición del caso, aprobada por el juez inferior.

El abogado de dicho apelante ha presentado además un alegato escrito, que sostuvo en el acto de la vista con el fin de que se revoque la sentencia condenatoria, solicitud que impugnó en dicho acto el fiscal, que á su vez solicita la confirmación del fallo apelado.

Se trata del delito definido en el artículo 358 del Código Penal, ó sea de un caso de alteración de la paz pública.

Una de las maneras de cometer ese delito, es cuando voluntariamente se perturba ó molesta con ruídos á una congregación de personas reunidas con el fin de realizar un acto lícito, como es el culto religioso.

Juan Vilaró posee un fonógrafo que, al decir de varios testigos, reproduce buena música y la voz de artistas de mérito universalmente reconocido; y tiene aquél el derecho indiscutible de deleitarse, así como su familia, dentro de su hogar y en las horas convenientes, con las armonías que el aparato produce. Pero Juan Vilaró, durante dos ó tres semanas anteriores á la denuncia, tocó ese fonógrafo desde las siete y media de la noche, cuando se celebraba el culto religioso en la Iglesia de los "Hermanos Unidos en Cristo," Iglesia que está muy cerca de su casa, y de tal modo colocaba el aparato en el comedor de su vivienda, con las puertas y ventanas abiertas y con la bocina dirigida hacia el Templo, que, según la inspección personal hecha por el mismo juez, que se situó en la nave segunda en que se celebraban los cultos á que se refiere la denuncia, el sonido se percibía con tal intensidad que podía estorbar la percepción por el auditorio de las palabras de un predicador, suponiendo colocados uno y otro en los sitios de costumbre.

De modo que, ya tenemos que el sonido del fonógrafo si se tocaba en las horas de culto, molestaba en su ejercicio á las personas que en la Iglesia se congregaban; y que se tocaba de noche y en esos momentos, es indudable, porque lo reconoce la misma defensa de la parte apelante, por deducirse así claramente de la prueba en este caso practicado.

El Pastor N. H. Huffman se quejó de esas molestias al juez municipal sustituto, Augusto Pasarell, y este funcionario llamó á su presencia á Vilaró y le manifestó cuánto le había dicho el ministro del culto de que se trata, referente á las perturbaciones que sufrían en el templo con el fonógrafo, y Vilaró

le contestó que efectivamente lo tocaba en su casa porque se consideraba con derecho para ello; é insistiendo dicho juez sobre la queja de que perturbaba expresamente las funciones del culto, contestó Vilaró que en su casa podía hacer lo que tuviera por conveniente.

El testigo Herminio Rodríguez, que tiene el empleo, según dice, de predicador del evangelio, en una noche de culto en que otro predicaba y en la que molestaba el fonógrafo, subió á la casa de Vilaró á rogarle que suspendiese la música mientras los oficios terminaban, y le contestó de modo violento, añadiendo que lo hacía con la intención de interrumpir el culto.

Pedro Pagán, uno de los concurrentes á la Iglesia, también suplicó á Vilaró la suspensión de la música mientras el culto se celebraba; pero éste le contestó que no la daba la gana, que estaba en su casa, y al hacerle saber que perturbaba, dijo que lo hacía con ese fin, y que lo denunciaran.

La declaración del testigo de cargo D. P. W. Drury, ministro protestante de Juana Díaz, y que sustituyó en una de sus ausencias al Pastor Huffman, revela solamente que tuvo mayor fortuna que éste y que Rodríguez, Pasarell y Pagán en sus gestiones cerca de Vilaró, puesto que éste le manifestó á Drury que no tocaba el fonógrafo con intención de molestar y que tendría más cuidado en lo secusivo; pero esta manifestación no destruye sino que robustece el hecho probado de que ya se tocaba por la noche en las horas de culto, y que sus sonidos molestaban en el ejercicio del mismo, y si cuando la queja también amistosa de Drury no tuvo Vilaró el propósito de molestar, ese buen propósito no fué persistente en su ánimo como lo demuestran sus actos posteriores á esa entrevista.

Los testigos de la defensa no destruyen en modo alguno las afirmaciones de las anteriores personas.

La circunstancia de que nunca se suspendiesen por tal motivo las ceremonias religiosas, no desnaturalizan el hecho de la molestia ó perturbación causada con el ruído y de modo voluntario, que es lo que constituye la acción justiciable.

La palabra "wilfully" (voluntariamente) aplicada á la intención con que se ejecute un acto, implica simplemente propósito ó voluntad de cometerlo, según las disposiciones finales del Código Penal en su título 20.

Una intención maliciosa y criminal se presume por la manera y deliberación con que se cometa un acto ilegal con el propósito de perjudicar á otro, siendo indispensable para que exista delito que haya unión ó simultaneidad entre el acto y la intención criminal, según así lo determinan los artículos 11 y 12 del Código Penal.

No cabe duda alguna dé que Vilaró tuvo el marcado propósito de perturbar y molestar los ejercicios del culto, y conscientemente, es decir, sabiendo que molestaba y perturbaba, tocaba insistentemente su fonógrafo en las horas de la noche, en que las personas congregadas celebraban sus oficios religiosos, sin acceder á los ruegos y advertencias que se le hicieron después de hacerle conocer hasta qué punto su fonógrafo molestaba y perturbaba. Hubo, pues, voluntariedad, siendo patente la íntima relación entre los actos de Vilaró y su intención criminal.

Es verdad, como dice la defensa, que nunca se le oyó tocar el fonógrafo en los oficios de la mañana, pero ésto no desvirtúa el hecho de que en las horas de la noche y cuando el culto se celebraba, lo tocaba con la intención de perturbarlo, y esta intención criminal no nace de deducciones sino que resulta de sus propias manifestaciones, según anteriormente se ha demostrado.

De otro modo, desde el instante en que se le hizo saber que molestaba, ó no lo hubiera tocado durante los oficios, ó lo hubiera colocado en otro lugar de su propia casa, en donde por la distancia presumiese que no se oían con tanta intensidad los sonidos que el aparato producía. Esa hubiera sido una conducta discreta y plausible.

Conforme con la defensa en que no se puede decir que la música sea un ruído, porque éste es el sonido inarticulado y

confuso, más ó menos fuerte; pero la música, para los efectos del artículo 358 del Código Penal, puede venir á ser un ruído, según las condiciones de lugar y tiempo y en relación con el estado de ánimo de las personas que la escuchan.

Un fonógrafo por bueno que sea, con la bocina colocada en la puerta abierta de un templo, y cuyo fonógrafo toca en los momentos en que predica un orador y cuando debe suponerse que los congregados están ávidos de oir su palabra, entonces esa música, en ese tiempo, en ese lugar y para esas personas, pierde de momento su melodía para convertirse en ruído porque les impide oir lo que se dice por el orador, que es lo que allí en esos instantes les congrega.

En otras condiciones ese fonógrafo deleitaría á esas personas con sus armonías.

El apelante dice que si se convirtiera en denunciante, bajo el mismo fundamento de que los cánticos religiosos y las voces del órgano de la Iglesia perturban y molestan á su familia, y se violaba su derecho á la paz y tranquilidad de su hogar, ¿podría dictarse una sentencia condenando á los concurrentes á la Iglesia por el delito de perturbar la paz pública? Si esto no puede ser, añade, entonces tampoco puede condenársele á él en este caso apelado, porque las circunstancias son iguales y tan respetables son uno como otro derecho.

Negamos que las circunstancias sean iguales en el caso real de que tratamos y el caso supuesto que como argumento se presenta.

No cabe este último dentro de los términos del artículo 358 del Código Penal, que es el aplicado á Vilaró.

En este caso, se ha demostrado que Vilaró, voluntariamente y con intención de molestar y perturbar los oficios de la Iglesia inmediata, tocaba su fonógrafo de noche, en las horas en que aquellos se celebraban, y Vilaró es responsable del delito definido.

En mérito de las razones expuestas, la sentencia que dictó el juez de la Corte de Distrito de Ponce en 21 de enero del

corriente año, debe confirmarse é·imponerse las costas de este recurso al apelante Juan Vilaró.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández, MacLeary y·Wolf.